UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANDRE BARNES,

Plaintiff,

v.

Case # 14-CV-6364-FPG

DECISION & ORDER

JAMES M. COUGHLIN,

Defendant.

## INTRODUCTION

Plaintiff Andre Barnes ("Plaintiff") brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant James M. Coughlin ("Defendant"), a Gates Town Police Officer, alleging that he was falsely arrested and maliciously prosecuted for Aggravated Unlicensed Operation of a Motor Vehicle in the First Degree ("AUO") in violation of New York Vehicle and Traffic Law § 511-3(a)(ii). ECF No. 1. Both parties have moved for summary judgment. ECF Nos. 12 and 14.

For the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 14) is DENIED, Defendant's Motion for Summary Judgment is GRANTED (ECF No. 12), and Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE.

## BACKGROUND[1]

### The Incident

This matter arises from an incident that occurred in the early morning hours of May 4, 2013. The afternoon before, May 3, 2013, Plaintiff, his girlfriend, and a woman named Cassandra, were driving together in Plaintiff's vehicle. That evening, Plaintiff rented a room at

[1] Unless otherwise indicated, the undisputed facts are drawn from each party's Statement of Material Facts included in their respective motions for summary judgment. ECF Nos. 12, 14, and 15.

the Gates Motel in Rochester, New York with his girlfriend. Cassandra also rented a room at the motel.

Plaintiff testified at a deposition for this lawsuit that he was aware that he did not have a valid New York State driver's license on May 3 or May 4, 2013, because it was suspended after he pled guilty to AUO shortly before the events relevant to this suit occurred. Plaintiff testified that he did not drive the group on the afternoon of May 3, but Cassandra told the police he did. According to Cassandra, Plaintiff drove her to the motel in a van on May 3, and she believed Plaintiff left in the same van the next morning on May 4. This is consistent with Defendant's testimony that he saw Plaintiff driving the van on the morning of May 4. Plaintiff maintains that he did not drive on May 3 or May 4.

After driving together in the afternoon on May 3, Plaintiff, his girlfriend, and Cassandra returned to their respective rooms at the motel. According to Plaintiff, Cassandra called him early the next morning to return a purse that she left in his van. Plaintiff testified that he left the motel around midnight and that his girlfriend drove him back to the motel in the morning to return the purse. He indicated that he returned the purse to Cassandra, they had a verbal argument, and he left.

According to Cassandra, a man sold drugs to her, Plaintiff, and his girlfriend in a room at the motel on the morning of May 4. There was a dispute over missing money. Plaintiff's girlfriend and the man left the room, and then Plaintiff allegedly hit Cassandra with the hotel phone repeatedly in the face and head.

**Defendant's Investigation**

On the morning of May 4, Defendant was working as a police officer and responded to a radio dispatch call for a "female screaming in the parking lot of Gates Motel." The female was identified as Cassandra. Plaintiff testified that he had no knowledge of this incident.

Cassandra told Defendant that Plaintiff assaulted her. Defendant inspected the room at the Gates Motel where the assault allegedly occurred, completed a report, and spoke with fellow officers regarding the suspect and evidence. Defendant also looked Plaintiff up in the police records system and learned that Plaintiff had been arrested for AUO in the First Degree about one week earlier. He also learned through Plaintiff's Department of Motor Vehicle records that Plaintiff's driver's license was currently suspended and that it had more than 10 prior suspensions.

The next day, May 5, 2013, Cassandra reported to the Gates Police and met with Defendant. She was shown a photograph array containing photographs of six men, she identified Plaintiff as her attacker, and she wrote her initials next to his photograph. Cassandra drafted and signed, under penalty of perjury, a Statement of Fact regarding the events of May 3 and May 4. In the Statement, Cassandra indicated that she wanted to press charges against Plaintiff for assault. She also wrote that Plaintiff had driven her on May 3 and that he drove from Gates Motel on May 4. Again, Plaintiff maintains that he did not drive on May 3 or May 4.

On May 5, 2013, Defendant signed an Accusatory Instrument Felony Complaint accusing Plaintiff of Assault in the Second Degree in violation of New York Penal Law § 120.05(2). He also signed an Accusatory Instrument Felony Complaint accusing Plaintiff of AUO in the First Degree in violation of New York Vehicle and Traffic Law § 511-3(a)(ii). The AUO Complaint is a pre-printed form with blank spaces that the officer must fill in. One of the pre-printed lines

reads: "[A]fter stopping the vehicle and learning the identity of the operator . . . ." It is undisputed, however, that Defendant did not stop Plaintiff's vehicle. Plaintiff was also charged with two traffic infractions. On May 5, 2013, Gates Town Court Justice Peter P. Pupatelli signed an arrest warrant for Plaintiff on these four charges.

**Plaintiff is Arrested**

On May 21, 2013, Plaintiff was arrested on all four charges. Plaintiff was arraigned before Judge Pupatelli on the two felony charges: assault and AUO. He was sent to Monroe County Jail where he remained until an indictment was returned by a Monroe County Grand Jury in July of 2013.

**Defendant's Testimony Regarding His Investigation**

On May 28, 2013, Judge Pupatelli held a preliminary hearing to determine if probable cause existed to believe that Plaintiff committed a felony. Cassandra did not appear at that hearing, so the District Attorney proceeded on the AUO charge only.

Defendant testified that he saw Plaintiff driving a vehicle on two separate occasions on May 4, 2013. When asked if he stopped the vehicle, Defendant stated that he did not. Defendant also testified that he did not personally interact with Plaintiff on May 4.

Another witness testified that on April 1, 2013, he observed Plaintiff plead guilty to AUO in the Third Degree and heard Plaintiff acknowledge that his license was suspended. Plaintiff's Certified Abstract Driving Record was admitted into evidence. It indicated that Plaintiff's license was in suspended status on May 4, 2013 and that it had more than 10 prior suspensions. Based on the hearing testimony, Judge Pupatelli found that probable cause existed to believe that Plaintiff committed AUO in the First Degree and ordered him to be held for grand jury action.

Defendant gave the same testimony before the grand jury that he gave at the preliminary hearing. He testified that he saw Plaintiff operating a motor vehicle on two occasions on May 4, 2013. He did not testify that he stopped Plaintiff's vehicle.

**Plaintiff's Assault Conviction**

In July of 2013, Plaintiff was indicted on the Assault in the Second Degree charge for the incident with Cassandra. He remained in custody from his arrest on May 21, 2013, until his trial in February of 2014. At trial, Defendant testified to the events of May 4, 2013. Plaintiff was present at trial, and he indicated at his deposition for this lawsuit that Defendant's trial testimony was similar to his prior testimony. Plaintiff was convicted of Assault in the Second Degree after a seven day trial. Plaintiff is currently serving a five year sentence for that conviction. Although Judge Pupatelli found probable case for the AUO charge, the District Attorney later declined to prosecute that charge.

## LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

To establish a material issue of fact, the non-movant need only provide "sufficient evidence supporting the claimed factual dispute" such that a "jury or judge [is required] to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-

89 (1968)). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

"When both parties have moved for summary judgment, we consider each motion separately, resolving all ambiguities and drawing all inferences from the record in favor of the party against whom summary judgment is sought." *I.V. Servs. of Am., Inc. v. Trustees of Am. Consulting Engineers Council Ins. Trust Fund*, 136 F.3d 114, 119 (2d Cir. 1998) (citation, internal quotation marks, and alterations omitted). If, after considering the evidence in the light most favorable to the non-moving party, the Court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita*, 475 U.S. at 586-87).

"[W]here a party is proceeding *pro se*, the court must read his or her supporting papers liberally, and interpret them to raise the strongest arguments that they suggest." *Davidson v. Talbot*, No. 9:01 CV 0473, 2005 WL 928620, at *5 (N.D.N.Y. Mar. 31, 2005) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)) (internal quotations and alterations omitted). "Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment." *Id.* (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## DISCUSSION

Plaintiff's Complaint includes two causes of action: false arrest and malicious prosecution. Plaintiff argues that he is entitled to summary judgment on the false arrest claim because Defendant allegedly lied in the Accusatory Instrument for AUO and thus the arrest lacked probable cause. Specifically, Plaintiff focuses on the fact that Defendant never pulled

him over while driving and yet the Accusatory Instrument reads: "[A]fter stopping the vehicle and learning the identity of the operator . . . ." Defendant has explained via sworn affidavit and testimony that he never pulled Plaintiff over and that he simply failed to cross out that pre-printed line. Defendant argues that no reasonable jury could find that the arrest lacked probable cause because one of the charges Plaintiff was arrested on resulted in a conviction.

Plaintiff also argues that he is entitled to summary judgment on the malicious prosecution claim because there was no probable cause for the AUO criminal proceeding and Defendant instituted the proceeding with actual malice. Defendant contends that Plaintiff's claim fails because there was a judicial finding of probable cause on this charge by a Town Court Justice.

For the reasons that follow, Defendant's motion is GRANTED and Plaintiff's motion is DENIED.

## I. False Arrest

A claim for false arrest brought under 42 U.S.C. § 1983 involving an alleged violation of the Fourth Amendment "is substantially the same as a claim for false arrest under New York law." *Levy v. City of New York*, 935 F. Supp. 2d 575, 585 (E.D.N.Y. 2013) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003)) (internal quotation marks omitted); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Under New York law, a plaintiff in a false arrest action must prove by a preponderance of the evidence that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Posr v. Doherty*, 944 F.2d 91, 97 (2d Cir. 1991). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Weyant*, 101 F.3d at 852 (citations and internal quotation marks omitted). "An

officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (internal quotation marks and citations omitted).

"[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and [] it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Id.* at 154. "Stated differently, when faced with a claim for false arrest, [the Court] focus[es] on the validity of the *arrest*, and not on the validity of each charge." *Id.* (emphasis in original). Moreover, "a valid judgment of conviction, a defense to the tort [of false arrest], requires dismissal of a § 1983 action on motion for summary judgment." *Camarano v. City of New York*, 646 F. Supp. 246, 249 (S.D.N.Y. 1986) (quoting *Cameron v. Fogarty*, 705 F.2d 676, 678 n.3 (2d Cir. 1983)).

Here, Plaintiff was arrested on four charges, including Assault in the Second Degree. It is undisputed that he was convicted of the assault charge in Town Court and is currently serving a five year sentence. Accordingly, Plaintiff's argument about his AUO charge is irrelevant, and this Court finds that no reasonable juror could conclude that Defendant lacked probable cause to arrest Plaintiff because a valid judgment of conviction exists for the assault charge. Thus, summary judgment is granted in Defendant's favor on the false arrest claim.

## II. Malicious Prosecution

To state a claim for malicious prosecution under § 1983, "a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a

malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted). Under New York law, a defendant is liable for malicious prosecution when (1) the defendant initiated a criminal proceeding against the plaintiff; (2) the proceeding terminated in the plaintiff's favor; (3) there was no probable cause for the criminal proceeding; and (4) the criminal proceeding was instituted with actual malice. *Posr*, 944 F.2d at 100 (citations omitted). "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)).

When a plaintiff in a malicious prosecution case has been "held by a Town Justice after a felony hearing on the charge, a *prima facie* case of probable cause for the prosecution [i]s established." *Gisondi v. Town of Harrision*, 120 A.D.2d 48, 53 (2d Dep't 1986); *Hornstein v. Wolf*, 109 A.D.2d 129, 132 (2d Dep't 1985), *aff'd*, 67 N.Y.2d 721 (1986); *Landsman v. Moss*, 133 A.D.2d 359, 360 (2d Dep't 1987). The plaintiff must "demonstrate fraud, perjury or the withholding of evidence in order to overcome this presumption of probable cause." *Gisondi*, 120 A.D.2d at 53 (citing *Hornstein*, 109 A.D.2d at 132).

Here, Judge Pupatelli held a preliminary hearing and determined there was probable cause to believe Plaintiff committed AUO in the First Degree. This created a presumption of probable cause to prosecute that charge. Plaintiff has not demonstrated fraud, perjury, or the withholding of evidence to overcome this presumption. Rather, he continues to harp on the fact that the Accusatory Instrument for AUO is allegedly "false" because it contained pre-printed language indicating that Defendant pulled Plaintiff over. As discussed earlier, Defendant admitted at the hearing where Judge Pupatelli found probable cause that this was an error and repeatedly testified that he never pulled Plaintiff over. This error does not affect the judicial

finding of probable cause. Accordingly, this Court finds that no reasonable juror could conclude that the AUO proceeding lacked probable cause because there was a judicial finding of probable cause in Town Court. Thus, summary judgment is granted in Defendant's favor on the malicious prosecution claim.

## CONCLUSION

For the reasons stated, Plaintiff's Motion for Summary Judgment is DENIED (ECF No. 14), Defendant's Motion for Summary Judgment (ECF No. 12) is GRANTED, and Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Any request to proceed *in forma pauperis* on appeal should be directed by motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk of Court is directed to terminate this action.

IT IS SO ORDERED.

Dated: June 24, 2016
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court